NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
No. 2018-0416

THE STATE OF NEW HAMPSHIRE

v.

NATHANIEL SMITH

Argued: October 23, 2019
Opinion Issued: March 6, 2020

Gordon J. MacDonald, attorney general (Gordon P. Landrigan, assistant attorney general, on the brief and orally), for the State.

Stephanie Hausman, deputy chief appellate defender, of Concord, on the brief and orally, for the defendant.

BASSETT, J. The defendant, Nathaniel Smith, appeals an order of the Superior Court (Brown, J.) denying his motion to enforce the terms of a plea agreement that he entered into with the State. He argues that the trial court erred in ruling that the sentences addressed in the agreement would run consecutively to an unrelated sentence that he was serving at the time that he executed the agreement. We vacate and remand.

The pertinent facts follow. The defendant was indicted on charges of first degree murder, second degree murder, conspiracy to commit murder, conspiracy to commit the sale of controlled drugs, and possession of a

controlled drug with intent to distribute. In February 2017, he entered into a plea agreement with the State in which he agreed to plead guilty to the charges of conspiracy to commit the sale of controlled drugs and possession of controlled drugs with intent to distribute. The State agreed to enter a <u>nolle prosequi</u> at a future date on the three murder-related indictments in consideration of the defendant's cooperation in the criminal prosecutions of three other individuals charged with the murder of the same victim. Paragraph I(A) of the plea agreement contains the following language:

    i.      Conspiracy to Commit the Sale of Controlled Drugs (Waiver of Indictment) (Extended Term): a stand-committed sentence of not more than thirty (30) years, nor less than ten (10) years, with three (3) years of the minimum sentence deferred for a period of ten (10) years on the conditions of his truthful testimony and full cooperation as to the crimes committed by [his alleged co-conspirators] . . . . If the terms of the deferred sentence are met, the deferred portion shall be suspended for a period of five (5) years upon his good behavior and compliance with the terms of his sentence.

    ii.     Possession of Controlled Drugs with Intent to Distribute (Waiver of Indictment) (Extended Term): a sentence of not more than thirty (30) years, nor less than ten (10) years, suspended for a period of ten (10) years on the conditions of his truthful testimony and full cooperation as to the crimes committed by [his alleged co-conspirators] . . . . This sentence is consecutive to the stand committed sentence reflected in paragraph I(A)(i) of this document and begins on the date of his release from incarceration on that sentence.

The agreement concludes with the following language:

    This agreement constitutes the full and complete agreement between the State and [the defendant], and no other promises or agreement exist between the parties. There shall be no modification to this agreement unless made in writing and signed by all the parties.

    In accordance with the plea agreement, the defendant pled guilty to the two drug-related charges in March 2017. Sentencing was deferred pending his anticipated cooperation in the prosecutions referenced in the agreement. After executing the agreement, a dispute arose between the defendant and the State as to whether the referenced sentences were to run consecutively to or concurrently with a sentence that the defendant was then serving on an unrelated drug charge.

The defendant subsequently filed a motion to enforce the plea agreement, seeking an order from the court imposing the sentences concurrently with the one he was serving at the time that he executed the agreement. Citing State v. Rau, 129 N.H. 126 (1987), and Crosby v. Warden, N.H. State Prison, 152 N.H. 44 (2005), the defendant argued that because the State was aware that he was serving another sentence at the time that he executed the agreement, and the agreement was silent as to whether the new sentences would be served concurrently with, or consecutively to, the existing sentence, the court should order the new sentences to run concurrently with the existing sentence. He asserted that he had relied upon the agreement by pleading guilty, testifying in one of the contemplated prosecutions, and "risking his personal safety by entering into a cooperation agreement with the State." At the hearing on the motion to enforce, the State did not "dispute that [the defendant] subjectively believed that he was getting concurrent time" when he executed the agreement; the State also questioned the value of his cooperation in the other prosecutions. The State concluded by proffering that, if the defendant did not agree that the sentences should be consecutive to the one that he was serving at the time that he executed the agreement, he was free to withdraw his plea.

The trial court considered the presumption established in Rau: "[W]hen a sentencing order, encompassing multiple counts or multiple indictments, is silent as to whether the sentences imposed on each count or indictment are to run concurrently or consecutively, the presumption is that the sentences run concurrently." Rau, 129 N.H. at 130. Noting that the sentences in Rau were imposed in the same sentencing order, see id., and that the sentences in Crosby were imposed by the same judge in orders issued less than a week apart, see Crosby, 152 N.H. at 47, the court rejected the defendant's argument that those opinions provided guidance in this case because the sentences addressed in the plea agreement were neither "temporally or factually related" to the sentence the defendant was already serving, nor "imposed by the same judge." The court concluded that the sentences were to be served consecutively to the existing sentence. The defendant has appealed this ruling.

On appeal, the defendant argues that the trial court erred in concluding that the sentences should run consecutively. He contends that the court should have determined "what, objectively, a reasonable defendant would understand about how the agreed-upon stand-committed sentence would relate to his current sentence."

The State and the defendant agree on two issues relevant to this appeal. First, they urge us to apply general principles of contract law to interpret the disputed plea agreement. See, e.g., State v. Little, 138 N.H. 657, 660-61 (1994) (applying general contract principles to determine whether plea agreement had been breached and its specific terms as defendant understood them); State v. Burr, 142 N.H. 89, 92-93 (1997) (analyzing defendant's contract-based arguments seeking relief under plea agreement to determine specific terms of

3

plea agreement as defendant understood them); State v. O'Leary, 128 N.H. 661, 663-64 (1986) (applying general contract principles to determine whether a purported plea agreement existed and, if so, whether it was enforceable). Second, they agree that the plea agreement does not address whether the new sentences were to run concurrently with or consecutively to the earlier imposed sentence.

In support of his argument that the contested sentences should run concurrently with the existing sentence, the defendant places great weight upon our holdings in Rau and Crosby. Both cases addressed the interpretation of sentencing orders, see Rau, 129 N.H. at 128; Crosby, 152 N.H. at 45, and we find them instructive as we consider the plea agreement before us today.

Paramount in our analysis in both Rau and Crosby was our recognition that "[a]t the conclusion of the sentencing proceeding, a defendant and the society which brought him to court must know in plain and certain terms what punishment has been exacted by the court." Rau, 129 N.H. at 129 (quotations omitted); see State v. Ingerson, 130 N.H. 112, 116 (1987) (observing that Rau establishes that defendant's due process rights require that term of sentence must be determinable at time sentence is imposed). In Little and O'Leary, we recognized that when a defendant knowingly and intelligently enters a guilty plea, he or she waives several constitutional protections, including the privilege against self-incrimination, the right to confront witnesses and, in many cases, the right to a jury trial. Little, 138 N.H. at 660; O'Leary, 128 N.H. at 665. When a defendant waives these state and federal rights in reliance upon a plea agreement, the waivers are conditioned upon the prosecution's undertaking to honor the agreement. O'Leary, 128 N.H. at 665. If the prosecution thereafter repudiates the agreement, the waivers cannot be enforced as knowing or voluntary. Id.

Prosecutors are important gatekeepers of our criminal justice process. Indeed, we have held that, in New Hampshire, prosecutions of criminal offenses that are punishable by imprisonment can only be initiated by public prosecutors. State (Premo Complainant) v. Martineau, 148 N.H. 259, 262-63 (2002) (observing court's long-standing concern that private prosecutions pose risks to rights of criminal defendants). When presented with evidence of criminal offenses punishable by imprisonment, prosecutors possess the sole authority to decide whether and whom to charge, the classification of the offense charged, and whether to offer a plea bargain.

Although previously we have refused to extend beyond insurance contracts the rule of construction that strictly interprets ambiguous contract language against the drafter, see Centronics Data Computer Corp. v. Salzman, 129 N.H. 692, 696 (1987), the unequal bargaining power of the parties in the context of plea agreements supports an extension of a similar principle when interpreting them. The prosecution must present an agreement to the

4

defendant that is clear with respect to the promised sentence — because it is in reliance upon that promise that the defendant waives his constitutional rights. As we have explained, to determine whether a plea agreement has been violated, the trial court must consider the specific terms of the agreement as the defendant reasonably understood them. Little, 138 N.H. at 660.

A presumption that sentences addressed in plea agreements are to be served concurrently with other sentences previously imposed is not only consistent with our case law addressing sentencing orders, it is also consistent with legislative intent. As the State noted at oral argument, prior to 1975, RSA 651:3, III provided in pertinent part that "any multiple sentences of imprisonment imposed on any person shall be served concurrently." RSA 651:3, III (1974) (amended 1975); see Rau, 129 N.H. at 129. We disagree with the State that the repeal of that language in RSA 651:3, III created a presumption that sentences would be consecutive unless specifically denoted as concurrent. As we observed in Rau, the legislature repealed that language to afford trial judges the discretion to impose consecutive sentences upon "that group of criminals who need the deterrent of consecutive sentences." Rau, 129 N.H. at 130. However, the legislature also indicated that, in the remainder of cases, trial courts "'should almost always impose sentences concurrently.'" Id. (quoting N.H.S. Jour. 306 (1975)). Our holding today does not limit that discretion.

Nor does our holding limit the ability of prosecutors to offer plea agreements conditioned upon the defendant receiving a sentence that is consecutive to a sentence the defendant is already serving. To ensure that the presumption that such sentences be served concurrently is overcome, a prosecutor need only state clearly in the plea agreement that the sentence to be imposed shall be served consecutively to the sentence the defendant is already serving.

Accordingly, we vacate the trial court's order and remand the case to allow the court to determine whether the State is able to overcome the presumption that the sentences addressed in the plea agreement are to be served concurrently with the existing sentence.

Vacated and remanded.

HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.